UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LOUIS DAN HARGROVE, III | CIVIL ACTION NO. 07-cv-1419 |
| VERSUS | JUDGE STAGG |
| WARDEN LOUISIANA STATE PENITENTIARY | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

A Webster Parish jury convicted Louis Hargrove, III ("Petitioner") and co-defendant Rufus Hampton, III of armed robbery, conspiracy to commit armed robbery, and aggravated second-degree battery. The trial judge sentenced Petitioner to 50 years for the armed robbery, 25 years for conspiracy to commit armed robbery, and 15 years for aggravated second-degree battery (all to run consecutively). The convictions and original sentences were affirmed on direct appeal. State v. Hampton, 865 So.2d 284 (La. App. 2d Cir. 2004), writ denied, 903 So.2d 452 (La. 2005). Petitioner was later resentenced as a second-felony offender and received an enhanced sentence of 100 years for the armed robbery. State v. Hargrove, 924 So.2d 477 (La. App. 2d Cir. 2006), writ denied, 943 So.2d 1059 (La. 2006). Petitioner next pursued a state post-conviction application. He now seeks federal habeas corpus relief. It is recommended, for the reasons that follow, that the petition be granted in part and denied in part.

**Relevant Facts**

The district attorney was directed to file a copy of the entire state court record. He made a filing that he represented was a complete record, but much of the record is missing. For example, neither the transcript of the trial nor the post-conviction filings and rulings were filed by the district attorney. Fortunately, Petitioner attached to his petition copies of his post-conviction application, related briefs, and state court rulings. The trial transcript is not in the record, but the habeas petition does not include a challenge to the sufficiency of the evidence or other claim that requires a detailed review of the trial record. The district attorney is admonished to ensure that a complete state court record is filed in future cases.

Petitioner has not challenged in any significant way the accuracy of the facts recited in the state court's appellate decision on direct appeal. Accordingly, this court will look to that decision for the essential facts surrounding the crimes. Those facts began when Eldred Lowe, Jr. pulled into the driveway of his home in Minden about 9:00 p.m one evening. As he got out of his car, Lowe saw a small red sport utility vehicle ("SUV") stop at the end of his driveway. He could see from the light of a bright street lamp that the SUV was driven by a black male, and another black male was riding as the passenger.

The passenger, later identified as co-defendant Hampton, got out of the SUV. He aimed a pistol at Lowe, approached him, and demanded money. Hampton grabbed Lowe and hit him with the pistol several times in the face and head, knocking Lowe to the ground and leaving a large gash on the top of his forehead and across his nose. Hampton reached in

Lowe's pocket and took a money clip holding $154 cash and several credit cards. Lowe heard Hampton get back in the SUV, which sped away. Lowe's wife called the police and took her husband to the hospital.

Lowe gave the police a description of the SUV and his attacker, who wore a stocking cap. The police cast a shoeprint left at the crime scene, and the print included an unusual oval shape. The next day, a detective spotted a red Kia Sportage that matched the description given by Mr. Lowe. Petitioner was in the driver's seat, parked in a store parking lot. Hampton came out of the store and got in the SUV. Police stopped the SUV for speeding.

Hampton was wearing a skull cap like the one described by Mr. Lowe. His tennis shoes, a K-Swiss model only recently introduced to the market and sold only at Dillard's stores, matched the shoeprint from the crime scene. A consensual search of the SUV found a pellet pistol hidden in the engine compartment under the hood. DNA evidence taken from the pistol matched the DNA of the victim. Petitioner admitted that he and Hampton had been in Minden on the night of the robbery. Hampton gave a conflicting statement that he was not in Minden that night. The victim identified Hampton in a photo lineup and said the SUV looked like the one involved in the robbery.

Police found a shopping list in the backseat of the SUV. Mr. Lowe's credit card records showed that his stolen card was used to purchase several items from a nearby Wal-Mart soon after the robbery. A surveillance recording from the Wal-Mart showed the red Kia SUV arrive in the parking lot at 9:00 p.m., just after the robbery. Two black males

got out of the vehicle, and one of them had a black hat on his head. One of the men was wearing shoes with a unique red tip on the front, just like the shoes taken from Petitioner when he was arrested. The recording showed the two men make purchases of the items on the shopping list, including a Tupac cassette that was found in the player of the SUV. Among the items found in the SUV was a price tag for a pair of shorts purchased from the Wal-Mart; the bar code identified the shorts as one of the purchases the two men made with Mr. Lowe's credit card.

**Double Jeopardy**

Petitioner and his co-defendant were convicted of armed robbery, conspiracy to commit armed robbery, and aggravated second-degree battery. Petitioner argued in his post-conviction application that double jeopardy principles do not allow his convictions for both (1) armed robbery and (2) conspiracy to commit armed robbery. He now presents that issue in his federal petition.

In response to the lengthy, multi-issue habeas petition, the State filed only a four-page memorandum. That memorandum (1) states incorrectly that a copy of the state court record including transcripts of all proceedings has been filed, (2) states incorrectly that copies of all briefs filed in connection with any appeal or post-conviction application have been attached as an exhibit, (3) asserts conclusorily that the state court decisions were not unreasonable, and (4) urges that Petitioner did not first exhaust his state court remedies with respect to the double jeopardy claim and a related ineffective assistance of counsel claim.

The exhaustion defense is based solely on the assertion that Petitioner did not raise those claims on direct appeal. Petitioner did, however, raise the claims in his post-conviction application. Exhaustion by either route is sufficient for federal habeas purposes. Busby v. Dretke, 359 F.3d 708, 723 (5th Cir. 2004). The State's exhaustion defense clearly lacks merit, so the double jeopardy claim must be examined.

The state court's direct-appeal opinion states that co-defendant Hampton argued on appeal that his *consecutive sentences* for the crimes violated double jeopardy principles. The appellate court summarily rejected the claim with the observations that it lacked merit, that each offense involved elements not common to the others, and the jurisprudence generally approves of consecutive sentences for defendants convicted of conspiracy and the principle offense. State v. Hampton, 865 So.2d at 292. There is no indication in the opinion that Petitioner raised any form of double jeopardy argument on direct appeal, although this court does not have the benefit of that portion of the state court record. Hampton's appellate brief is not in the record (and it was not required to be filed), so it is also unknown whether Hampton raised the double jeopardy defense in the same way Petitioner presents it here or merely as a challenge to consecutive rather than concurrent sentences.

When Petitioner did present his double jeopardy argument to the state court in his post-conviction application, Judge Jeff Cox wrote that a review of the appellate court's decision showed that "this exact issue has already been litigated." He then denied the claim pursuant to a Louisiana procedural law that bars the relitigation of claims. The state

appellate court noted that only co-defendant Hampton raised the double jeopardy issue on appeal, but it nonetheless found that the trial court had correctly denied Petitioner's double jeopardy claim as repetitive. It added that the same substantive reasoning it applied to Hampton's argument on appeal would apply to the merits of Petitioner's post-conviction claim. The Supreme Court of Louisiana denied writs without comment. There is a potential procedural bar defense in this body of decisions, but the State has not raised it, and the undersigned elects to proceed to address the claim on the merits.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." The provision prohibits a state from punishing a person twice "for the same offense." Mitte v. U.S., 115 S.Ct. 2199, 2204 (1995). The Supreme Court, in determining whether two statutes punish twice for the same offense, asks whether each offense must contain an element not contained in the other. Blockburger v. U.S., 52 S.Ct. 180 (1932); U.S. v. Agofsky, 458 F.3d 369, 371 (5th Cir. 2006).

Louisiana courts often refer to Blockburger but more often employ what is called a "same evidence test." That state-law standard is broader in concept than Blockburger. See Sanders v. Cain, 2002 WL 32191037 n.25 (E.D. La. 2002); Tran v. Cain, 1999 WL 460774 n.27 (E.D. La. 1999).

Petitioner's memorandum cites Blockburger but bases the double jeopardy argument on the Louisiana same evidence test. Federal habeas applicants must claim violations of a

federal constitutional right. Claims that the state courts improperly applied state law principles do not constitute an independent basis for federal habeas relief. Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991). Rather, a habeas application "shall not be granted with respect to a claim that was adjudicated on the merits in the state court unless the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner has not cited any Supreme Court decision that clearly established the same evidence test as part of a federal double jeopardy requirement. The Supreme Court has actually "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases. U.S. v. Felix, 112 S.Ct. 1377, 1382 (1992), citing Grady v. Corbin, 110 S.Ct. 2084, 2093 n. 12 (1990). And for federal law purposes, there is a long-standing "rule that a substantive crime and a conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes." Felix, 112 S.Ct. at 1384. See also Pinkerton v. U.S., 66 S.Ct. 1180, 1182 (1946) and U.S. v. Pena-Rodriguez, 110 F.3d 1120, 1131 n.11 (5th Cir. 1997). Accordingly, Petitioner's double jeopardy claim lacks merit.

**Ineffective Assistance of Counsel; No Double Jeopardy Defense**

**A. Burden on Petitioner**

Petitioner argues that counsel was ineffective because he did not move to quash the lesser of the armed robbery or conspiracy charges on grounds that both convictions would

violate Louisiana double jeopardy principles. Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. Id. 104 S.Ct. at 2068. In the context of counsel being faulted for not filing a pretrial motion to suppress, the Court has held that the prisoner must show that his suppression argument is meritorious and that there is a reasonable probability the verdict would have been different absent the excludable evidence. Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007). That standard appears to be applicable to this similar setting where counsel is faulted for not filing a motion to raise a double jeopardy defense.

The test for habeas purposes is not whether Petitioner made the showing required under Strickland. The test is whether the State court's decision – that Petitioner did not make the Strickland showing – was so incorrect as to be contrary to, or an objectively unreasonable application of, the standards provided by Strickland's clearly established federal law. Wiggins v. Smith, 123 S.Ct. 2527, 2535 (2003).

**B. Applicable Louisiana Law**

It was discussed above that Petitioner did not have a double jeopardy defense based on federal law. However, the claim that counsel was ineffective in this setting must be judged by determining whether reasonable counsel should have filed a motion to quash and invoked the Louisiana same evidence test for double jeopardy, because that is the law the state court would employ in deciding whether to quash the lesser charge of conspiracy. Reddit v. Cain, 2009 WL 2616035 (E.D. La. 2009) (Vance, J.).

The Supreme Court of Louisiana has held that if "the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one." State v. Steele, 387 So.2d 1175, 1177 (La. 1980). The test "depends on the evidence necessary for conviction, not all of the evidence introduced at trial." Id. For example, a policeman could not be convicted of both theft and malfeasance when both charges were based on the same misconduct. State v. Vaughn, 431 So.2d 763 (La. 1983).

Petitioner's co-defendant's argument that his consecutive sentences violated double jeopardy was rejected in the January 2004 direct appeal decision. The co-defendant's conduct, however, included not only the planning/conspiracy stage of the robbery but also the carrying out or consummation of the robbery. Petitioner, on the other hand, was proved to have conspired with Hampton, whom he delivered to the scene of the robbery. Petitioner took no actions afterward that contributed to his conviction of either armed robbery or

conspiracy. Petitioner's actions in planning the robbery and delivering Hampton to the scene were the facts on which both convictions were based.

In August 2004, a few months after the appellate court rejected Hampton's double jeopardy/sentencing error, it vacated a conviction of a defendant in a setting very similar to the facts surrounding Petitioner's convictions. The defendant in State v. Rabun, 880 So.2d 184 (La. App. 2d Cir. 2004) planned a robbery with an associate, drove the associate to the convenience store, and waited in the car while the associate carried out the robbery. He then drove the associate from the scene. The same appellate court that would have decided Petitioner's double jeopardy argument held that it violated state law double jeopardy principles to convict the driver of both armed robbery and conspiracy in this setting.

Trial counsel was not required to be so prescient as to foresee the Rabun decision, but that case was no great surprise. It is consistent with prior Louisiana jurisprudence and did not announce any new rule or holding. The state courts that reviewed the post-conviction application, which are usually addressed in just a few sentences or less, said that the issue had been fully litigated on appeal and that the same reasoning that applied to Hampton would apply to Petitioner. It is not clear whether a true double jeopardy issue was raised by Hampton on appeal or whether he merely argued that consecutive sentences somehow violated double jeopardy principles. In any event, the reasoning that would apply to Hampton, the individual who consummated the robbery, would not apply with equal force to Petitioner, for reasons explained in Rabun. Had trial counsel filed a motion to quash the

conspiracy claim, there is a great likelihood that the trial court or an appellate panel who considered the issue on direct appeal would have granted relief.

**C. Conclusion**

The court finds that trial counsel was deficient in not raising a double jeopardy defense under the facts of this case. There is a strong indication that the defense would have been meritorious, so prejudice has also been shown. Finally, the court finds that the state court's rejection of this claim in the post-conviction process was an objectively unreasonable application of Strickland and related federal law governing the claim. There are published Louisiana decisions that lend strong support to the double jeopardy defense, but the State has not cited any decisions that might have reasonably persuaded counsel not to pursue the apparently meritorious defense. The appropriate remedy is, as Petitioner requests, to vacate the lesser conspiracy conviction and Petitioner's 25 year sentence on the conspiracy conviction. Petitioner received an enhanced 100-year sentence for the armed robbery, so the granting of this relief will likely have little realistic effect.

**Ineffective Assistance of Counsel; Motion for Discovery**

Petitioner argued in his post-conviction application that his trial counsel was ineffective because he did not file a motion for discovery. Judge Cox wrote that a review of the record showed that counsel "did in fact file a Motion for Discovery and Inspection" in the case. The appellate court wrote that Petitioner made no showing of error with regard to the argument that trial counsel failed to request discovery.

Petitioner repeats his claim here, but he fails to rebut the state court finding that counsel did file a motion for discovery. Even the partial record that has been filed includes the discovery motion filed by trial counsel and the related order by the trial judge that the State provide the defense with all requested discovery. Tr. 3-5.

Petitioner argues that a discovery motion would have revealed the Wal-Mart surveillance recordings and allowed counsel to file a motion to suppress that evidence on the grounds that the recording was of poor quality. Petitioner's argument fails because (1) counsel did make a broad discovery request and (2) the argument that suppression could have been obtained on the grounds cited by Petitioner is highly doubtful. The trial judge viewed the recording at trial and found it admissible. The ruling was never challenged after the trial. Petitioner has not demonstrated that the state court's decision of this claim was an objectively unreasonable application of Strickland to these facts.

**Habitual Offender Adjudication**

**A. Habitual Offender Hearing**

Petitioner's original sentences for his three crimes were 50, 25, and 15 years, all to run consecutively. The State later sought an enhanced sentence for the armed robbery conviction on the grounds that Petitioner was an habitual offender. The enhancement request was commenced by the filing of a bill of information that charged Petitioner with having previously been convicted of two felonies. The prior convictions listed in the bill of information were (1) an October 12, 1998 Bossier Parish conviction for possession of

marijuana with intent to distribute and (2) a March 20, 2002 Caddo Parish conviction for simple robbery. Tr. 5.

To prove a defendant is a habitual offender, the State must initially prove the prior felony conviction and that defendant is the same person who was convicted of the prior felony. The State, at the first multiple offender hearing, did not present photographs, fingerprint evidence, or other forms of identification evidence often received at such hearings. It called a single witness, Debra Young, a probation-parole specialist with the Department of Corrections. Ms. Young testified that she knew Petitioner because he had previously been on parole supervision in the Shreveport district office, and Young was his assigned parole officer. Ms. Young identified some documents for the State. She first described a diminution of sentence certificate that Petitioner signed when he was released on parole in 2002 relating to a charge for possession of cocaine. (The cocaine conviction was not listed in the habitual offender bill of information.) Young also identified a document as a verification of Petitioner's first-offender pardon dated January 22, 1996 after Petitioner was released from parole after completing a sentence on a simple robbery charge. She identified a third document as a letter from the parole board acknowledging the receipt of papers signed by Petitioner in January 2002 regarding a parole violation related to the cocaine conviction. Young identified the fourth document shown her as a parole supervision plan that Young made and Petitioner signed when he was released to parole supervision in

May 2001 (presumably for the cocaine conviction). Young said that she was not aware of the marijuana conviction charged in the bill and did not supervise Petitioner in that case.

Defense counsel questioned Ms. Young on cross-examination and asked about the first-offender pardon for the charge of simple robbery. The bill of information referred to a 2002 conviction for that crime, but Ms. Young testified on direct that the document she identified was a pardon dated 1996. Counsel asked if the pardon related to the March 2002 simple robbery listed in the bill of information. Ms. Young said she did not have the dates of the convictions in front of her.

The prosecutor then offered as Exhibit 1 all of the documents identified in the testimony. The exhibit was admitted without objection, and the witness stepped down. The prosecutor then offered into evidence the minutes of prior convictions, including documentation "in Case No. 156,468 showing that he was convicted of simple robbery in Caddo Parish on March the 20th of 2002." The minutes were admitted without objection. Defense counsel stated that he had no evidence to put on.

The prosecutor conceded that he had no record evidence regarding the marijuana conviction cited in the bill of information. Judge Campbell stated that he nonetheless found adequate evidence to determine that Petitioner was a third-felony offender based on the testimony of the parole officer "with regard to his conviction for simple robbery and possession of cocaine." Judge Campbell then found that the State had proved "beyond a reasonable doubt" that Petitioner was a third-felony offender, set aside his previous armed

robbery sentence, and imposed an enhanced sentence of 150 years on that conviction. The judge began to discuss enhancing the sentences on the other two convictions, but the prosecutor persuaded him that was not permitted. The judge also told Petitioner that he was lucky there was no evidence of the marijuana felony or he would have faced a natural life sentence as a fourth offender. Tr. 20-33.

**B. First Appeal**

Appointed counsel filed an appeal and specifically argued that (1) the State presented no evidence at all of a prior conviction of possession of marijuana with intent to distribute and (2) the State's evidence referenced a 1996 simple robbery conviction rather than the charged 2002 conviction. Counsel added that Petitioner was not fingerprinted in court for comparison with the prints taken of the persons convicted of the prior offenses, and Ms. Young did not offer testimony that Petitioner was convicted of a 2002 simple robbery. Tr. 48.

The state appellate court acknowledged counsel's arguments, summarized the evidence, and noted that the cocaine conviction referenced at the hearing was not charged in the bill of information. The court noted that the first-offender pardon received in 1996 regarding a simple robbery charge was not related to the conviction cited in the bill of information (Tr. 67-68), and the prosecutor had introduced court minutes which he "mistakenly thought showed both of the convictions on the charges alleged in the habitual offender bill." The court wrote that Petitioner had not raised objections in the trial court

regarding those issues, but it was "error patent for a trial court to sentence a person as a habitual offender based on a felony conviction which was not specifically alleged in the habitual offender bill of information." Tr. 69. It then discussed the burden on the State when attempting to prove a prior conviction and held that the proof offered "failed to reflect the manner of conviction or whether Defendant was represented by counsel at *either* of the prior alleged offenses." (emphasis added) . The court said that it would be a "fundamental violation of due process" for the State to attempt to substitute the cocaine conviction (not mentioned in the bill) for the unproven marijuana conviction. Tr. 71.

The appellate court next acknowledged Petitioner's argument that the prosecution did not establish his identity as the person referred to in the documents entered into evidence. It summarized state law requiring the State to establish both the prior felony conviction and the defendant is the same person convicted of that felony. A state statute set forth the method for making prima facie proof of identity by a certificate from the Clerk of Court containing the name of the person convicted, a photograph, fingerprints, a statement of the convicting court, the date and time of sentence, the length of the sentence, and the time of discharge. The mere fact that the person charged as a multiple offender and the person named on a prior conviction have the same name is, standing alone, not sufficient to prove identity. The court looked to Ms. Young's testimony and observed that she was not familiar with Petitioner's prior convictions listed in the habitual offender bill so that her testimony "did not establish

that Defendant was the same person who committed *those crimes* in accordance with" the state habitual offender statute. (emphasis added). Tr. 71-72.

The appellate court had begun its opinion with a summary that said the judgment of the trial court adjudicating Petitioner as a third-felony offender and resulting sentence "are vacated and the matter is remanded for further proceedings consistent with this opinion." Tr. 67. The decree at the end of the opinion, however, somewhat inexplicably states that the adjudication as a third-felony offender and resulting sentence are vacated, but the matter is "remanded for resentencing as a second-felony offender in accordance with this opinion." There is no explanation as to any basis to have deemed Petitioner a second-felony offender, especially when the court just stated that there was insufficient evidence that Petitioner committed either of the crimes listed in the habitual offender bill of information. State v. Hargrove, 886 So.2d 1192 (La. App. 2d Cir. 2004).

**C. Resentencing**

On remand, Judge Jeff Cox opened a sentencing hearing by noting that the appellate court "found instead of being a third-felony offender that you are a second-felony offender and they ordered that your sentence be vacated and you are ordered to be remanded for resentencing as a second felony offender in accordance with this opinion." Tr. 34. No evidence was received at this hearing. The applicable sentencing range was from 49.5 years to 198 years for a second offender. Judge Cox imposed a 100-year sentence. Tr. 34-35. The

court reporter noted on the transcript that defense counsel was present at this resentencing, but counsel never said a word.

**D. Second Appeal**

Petitioner's appointed appellate counsel filed a brief that raised a single issue of excessive sentence. Tr. 56-62. Petitioner filed a "pro se supplemental brief" that presented an additional issue of whether the prosecution presented sufficient evidence to support the adjudication. Petitioner pointed out that the only evidence related to the simple robbery conviction was minutes of that conviction from the Caddo court, but there were no fingerprints or even testimony from Ms. Young to connect Petitioner to that conviction. Tr. 82-83. The pro se argument was largely a reminder of what the appellate court had already recognized in its original decision.

The pro se supplemental brief is stamped filed November 2005, but the state appellate court's March 2006 opinion makes no mention of the sufficiency of the evidence issue. The court characterized its prior decision as finding "that the state had only proven that defendant was a second felony offender." Tr. 89. The opinion then discusses only the excessive sentence issue raised in counsel's brief. Tr. 88-91. State v. Hargrove, 924 So.2d 477 (La. App. 2d Cir. 2006), writ denied, 943 So.2d 1059 (La.). Petitioner filed a petition for rehearing in which he pointed out that the appellate court did not include in its ruling a discussion of the issue raised in the pro se supplemental brief. Tr. 92-95. A five-judge panel

issued an order that the request for rehearing was "denied." Tr. 105. The Supreme Court of Louisiana denied writs without comment.

**E. Analysis**

The State did not address this issue in its four-page memorandum, other than in its conclusory statement that the state court decisions were not objectively unreasonable applications of federal law. The court has reviewed the available record in detail and finds that there is no record evidence other than the identity of names that Petitioner is the same Louis Hargrove, III who was convicted in Caddo Parish of the 2002 simple robbery charged in the multiple offender bill of information. That fact was acknowledged by the appellate court in the body of its first opinion, and the court also recognized Louisiana law that identity of names is not sufficient evidence of a prior conviction. See City of Monroe v. French, 345 So.2d 23, 24 (La. 1977) ("In Louisiana, proof that a person of the same name has been previously convicted does not constitute prima facie evidence that the two persons are the same."). But what appears to have been a drafting error in the decree caused trial counsel, the trial judge, the prosecutor, appellate counsel, and even an entirely new appellate court panel to assume on remand that Petitioner had been adequately proved to be a second-felony offender.

It appears the state court should have corrected its error during the second appeal and remanded the case for resentencing. There was not adequate evidence of either billed enhancement crime to support a habitual offender adjudication under Louisiana law. This

case does not come to the federal court as an appeal. It is a petition for writ of habeas corpus, and a federal habeas relief does not lie for errors of state law. Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007).

A federal judge shall entertain a habeas petition filed by a state court prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Even then, relief shall not be granted with respect to a claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was (1) contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

There is some debate among the circuit courts as to whether an unchallenged submission of a record of prior conviction of a person by the same name is sufficient evidence for a conviction of a crime – such as felon-in-possession of a firearm – that includes a prior conviction as an element of the crime. See U.S. v. Jackson, 368 F.3d 59 (2d Cir. 2004) and U.S. v. Allen, 383 F.3d 644 (7th Cir. 2004) (collecting cases and discussing the issue when the prior conviction is an element of the current offense). See also CardenasAlvarado v. INS, 48 F.3d 530 (5th Cir. 1995) (unpublished) (unobjected to conviction documents that bore petitioner's name were sufficient to prove prior conviction that gave rise to deportability) and U.S. v. Rodriguez, 195 F.Supp. 513, 515 (S.D. Tex.1960)

(in the absence of contrary testimony, identity of names is sufficient), aff'd, 292 F.2d 709, 710 (5th Cir.1961). Of course, a prior conviction must be proved beyond a reasonable doubt when it is an element of a crime.

But the Supreme Court does not require proof beyond a reasonable doubt of a prior conviction that is used to merely enhance the sentence for a current offense. See Almendarez-Torres v. U.S., 118 S.Ct. 1219 (1998). Various state and federal courts have taken different approaches to whether an identity of names, if unchallenged, is sufficient to satisfy the lower burden that applies to sentencing factors and link a defendant to a prior conviction for purposes of an habitual offender sentencing enhancement. See McDransfield, Evidence of Identity for Purposes of Statute as to Enhanced Punishment in Case of Prior Conviction, 11 A.L.R. 2d 870, §§ 7 and 9. Louisiana takes the view that the same name is not sufficient proof for a sentencing enhancement, but other states take a different approach. See State v. Johnson, 160 S.W. 3d 839, 843 (Mo. App. S.D. 2005) (noting Missouri's well-established rule "that identity of names makes a prima facie showing that the person named in a record is in fact the defendant for the purpose of invoking habitual criminal acts.").

There is no indication the Supreme Court of the United States has made a holding or pronouncement that would clearly establish that the proof presented in this case is constitutionally insufficient. And it is only the holdings of that Court that matter for purposes of § 2254(d). Carey v. Musladin, 127 S.Ct. 649 (U.S. 2006). The prosecutor offered into

evidence minutes of a prior conviction for Louis Dan Hargrove, III in Case No. 156,468 showing that he was convicted of simple robbery in Caddo Parish on March 20, 2002. Defense counsel offered no objection, but did seek clarification that the minutes were regarding "simple robbery 20 March 2002, is that correct?" Once confirmed, counsel stated that he had "no objection to that," and there was no time at which Petitioner or his counsel so much as hinted that he was not the same Louis Dan Hargrove, III convicted of that simple robbery in nearby Caddo Parish. Tr. 28-29. That showing would be held adequate in many jurisdictions, and there is no Supreme Court decision that clearly establishes that it is insufficient.

Petitioner's adjudication as a second-felony offender based on having the same name as on the prior conviction was not adequate under Louisiana law, and the issue was acknowledged but then somehow overlooked by the state appellate court. The ultimate decision of the state court that Petitioner is a second-felony offender is, however, supported by the fact that Petitioner has the same, somewhat unusual, name as the person convicted of simple robbery in a nearby parish, and neither Petitioner nor his attorney offered any objection to identity at the sentencing hearing. The final adjudication does not, therefore, run afoul of any clearly established federal law as decided by the Supreme Court. Habeas relief on this claim is not permitted.[1]

---

[1]Petitioner received a 100-year sentence because of the habitual offender enhancement. If the enhancement were vacated, it is possible that the State could improve the record and establish that Petitioner was actually a three or four time habitual

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition be **granted in part** by vacating his conspiracy conviction and his 25 year sentence on the conspiracy conviction, and

**IT IS FURTHER RECOMMENDED** that the petition be **denied** in all other respects.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

---

offender. Even if the State did not or could not seek an enhancement, Petitioner would face a sentence on the armed robbery conviction of 10 to 99 years without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64. The state court's discussion of the factors behind Petitioner's original sentence suggests that Petitioner is not a likely candidate to receive a lenient sentence if he were to prevail and see the issue return to state court for a new sentencing. See State v. Hampton, 865 So.2d at 292-93.

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of April, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE